## ROIG et al. v. CENTRAL PASTO VIEJO, Inc.

(Circuit Court of Appeals, First Circuit. June 12, 1925.)

No. 1844.

1. Appeal and error ⚌1094(1)—Determination of fact in same way by two tribunals will not be disturbed, in absence of plain error.

Where a question of fact has been determined in the same way by two tribunals, the determination will not be disturbed, in the absence of plain error.

2. Tenancy in common ⚌44—Defense to action for legal redemption stated.

Civ. Code Porto Rico, § 1424 et seq., provides for an action for legal redemption, whereby, when one owner of an estate held in common sells his interest, the other owner or owners may be subrogated as the purchaser by reimbursing the purchaser for the amount paid or assuming his obligations. Held, that such an action was not defeated because of an agreement by the purchaser, as part consideration for the purchase, to lease certain land to the vendors, where before trial plaintiff secured his release from such obligation.

Appeal from Supreme Court of Porto Rico.

Suit by the Central Pasto Viejo, Inc., against Antonio Roig and others. Defendants appeal from the judgment of the Supreme Court of Porto Rico, affirming the judgment of the district court in favor of plaintiff. Affirmed.

Jose A. Poventud, of Ponce, Porto Rico, and New York City, for appellants.

Henry G. Molina, of San Juan, Porto Rico, for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is an appeal from a decision of the Supreme Court of Porto Rico, affirming a judgment of the district court of Humacao. The case is described as one of legal redemption by a co-owner, exercising a right given by sections 1424, 1425, and 1427 of the Civil Code of Porto Rico. These sections are as follows:

"1424. Legal redemption is the right to be subrogated, with the same conditions stipulated in the contract, in the place of the person who acquires a thing by purchase or in payment of a debt.

"1425. A co-owner of a thing held in common may exercise the redemption in case the shares of all the other co-owners, or of any of them, are sold to a third party.

"When two or more co-owners wish to exercise the redemption, they shall only

do so pro rata with regard to the share they have in the thing owned in common."

"1427. The right of legal redemption cannot be exercised except within nine days, counted from the entry in the registry, and in the absence thereof from the time the redeemer may have had knowledge of the sale.

"The redemption of co-owners excludes that of adjacent owners."

Sections 1414 and 1421 also have a bearing:

"1414. The vendee substitutes the vendor in all his rights and actions."

"1421. The vendor cannot exercise the right of redemption without returning to the vendee the price of the sale, and furthermore:

"1. The expenses of the contract and any other legitimate payment made by reason of the sale.

"2. The useful and necessary expenses incurred by the thing sold.""·

Shortly stated, these sections provide that, if and when one owner of an estate held in common sells his interest, the other owner or owners may step into the shoes of the purchaser, in order to promote the public policy of preventing multiplicity of undivided interests in property. It is a statute in favor of the integration of title to land. Compare Gonzalez v. Acha, 21 Porto Rico, 124, 126. This right is effected by bringing an action (retracto), and a majority of the Supreme Court have held that the action must be actually brought within 9 days, and that notice of intention given within that period is not enough. See Felici v. Ribas, 11 Porto Rico, 517, 525. It has also been held by that court that the purchase price, if known, should be deposited in court at the time of the bringing of the action. Gonzalez v. Acha, 21 Porto Rico, 124, 126. This strict construction of a right to redeem is grounded, not on the express language of the present Code, but upon the conclusion that the present law is in that regard in effect a re-enactment of the old Spanish law. Gonzalez v. Acha, supra. But, as stated in that case, if the purchase price is unknown, then a bond may be given to insure such deposit when the purchase price becomes known.

While these decisions indicate that the ordinary rule in redemption cases, where offer in the bill to redeem is enough, is not applied, they also show that the right of the plaintiff is not to be destroyed by failure to make deposit in court at the time when the suit is brought, if there then be excusable ignorance of the terms of the purchase.

[1] In this case, both courts, in careful and elaborate opinions, held for the plaintiff. Only plain error would warrant this court in disturbing conclusions of fact so reached. Gandia v. Porto Rico Fertilizer Co. (C. C. A.) 291 F. 18, 20.

The assignments of error, here as before the Supreme Court of Porto Rico, involve 3 points:

(1) Whether the property in question had been divided by the co-owners so that there was no real co-ownership.

(2) Whether the deposit of $12,000 with the clerk of the court was adequate.

(3) Whether the plaintiff appellee could perform all the terms of the contract of sale to the appellants and thus be subrogated to the appellants' rights.

The property involved is a farm property called Rosario, situated in Humacao, and described on the register as containing 200 acres, more or less. But, according to the plan offered in evidence, it actually surveyed only 175.789 acres. This shortage bears on the amount of deposit requisite. In 1903, the title to this tract stood in the name of the widow Rosario Mandry, owning one-half, undivided, and in her seven children, each owning one-fourteenth, undivided.

The first question—as to whether the property had been partitioned—involves a fairly complicated history of the title, elaborately dealt with by both courts. A restatement of that history is here unnecessary. It is enough to say that a careful examination of the opinions of both courts and of the evidence leaves us in no doubt whatever that the courts below were right in holding that there was, as matter of fact, no partition of the property in question. At most, there were only negotiations, or possibly an agreement, among some of the co-owners, that if and when certain outstanding undivided interests should be obtained, they would then partition the property along lines described.

The next question is as to whether the deposit of $12,000 was adequate. The contract of sale to the appellants purported to cover 69 acres at $195 per acre, which would amount to $13,455. But in the appellants' acceptance of the contract it was expressly set forth that the transaction included all the farm properties and the condominium (undivided interest) in farm properties in the designated wards owned by the vendors; so that the contract cov-

ered the vendors' rights in this tract, whether divided or undivided. The evidence showed, and the court below found, that the vendors were not the owners of any particular tract of 69 acres, but of nine twenty-eighths of a tract which, on survey, was found to contain only 175.789 acres, which would be equivalent to approximately 56½ acres. This, at the price of $195 per acre, would amount to a little over $11,000. It is therefore obvious that the deposit of $12,000 was amply sufficient, as both courts held.

[2] The third point—that the plaintiff could not perform the terms of the contract with the appellants—arises out of the following provision in the contract of sale:

"In consideration of the sale by the Bustelo spouses to Roig of the Rosario property the said spouses exact as an essential condition of the said sale, in addition to all of the preceding stipulations, that Roig shall lease to the said spouses a tract of 100 acres that Roig shall segregate from his Pitajaya property of Bejuca fronting on the public road running from Humacao to the Playa for a period of ten years at $7 per acre yearly and the taxes," with a five-year option of purchase at $200 per acre.

The district court of Humacao held that this provision for lease of other properties by the appellants to the vendors should not be considered as forming part of the contract for the purposes of this action, saying:

"To admit in cases of this kind allegations of existing conditions obstructing redemption would be to render illusory the right of redemption given by law."

The Supreme Court, on this single point, differed from the District Court, saying:

"Only in case fraud is alleged and proved, or in the case of an unreasonable or imaginary condition foreign to the transactions of men, or other similar situation, can the opinion held by the trial judge be adopted and the condition be considered as not imposed. But in fact that is not the case here."

But the Supreme Court also held that under a deed executed on May 23, 1923, some months after this action was brought in December, 1922, the vendors had conveyed all their rights and interests under this contract with the appellants, and that, from the moment the appellee bought from the vendors their "right to the lease, the difficulty was eliminated and its right to redeem must be recognized."

This holding was right. The appellants had no rights, except to receive seasonably the amount of money they had paid or were obligated to pay the vendors, and an exoneration from their agreement to give to the vendors a lease of the designated 100-acre tract, with the option of purchase. When the plaintiff obtained all the rights and assumed all the obligations that the vendors had as to this part of the trade, the appellants' rights were fully satisfied. When the appellee took over the rights of the vendors in this regard, the purchasers had no outstanding obligation to any third party.

Nor is there any merit in the appellants' contention that section 134 of the Code of Civil Procedure was disregarded. This section requires that facts material to the case accruing after the filing of the original pleadings shall be set up in a supplemental pleading. But that provision is not applicable to this situation. The plaintiff's bill to redeem set up, on information and belief, that the appellants had bought the property in question at the rate of $195 per acre, payable part in cash and the balance in installments.

In the defendants' answer, filed on February 17, 1923, the defendants pleaded that the vendors fixed as an essential condition of the sale that the appellants should lease them a tract of 100 acres (describing it), with an option of purchase at $200 per acre. So far as appears, this was the first information the plaintiff had of the existence of any such stipulation in the contract; it thereupon purchased of the vendors their rights under the contract, in order to be able to show, as it did show at the trial, that it was then ready and willing to reimburse and exonerate the purchasers for all expense and liabilities accruing out of their contract of purchase. No new pleading was necessary to lay a foundation for this evidence. In strict order, it should have been rebuttal.

It is elementary that an ordinary bill to redeem requires only an offer by the plaintiff to pay the defendant what shall be found due. Compare Aldrich's Eq. Pleadings, p. 409; 3 Whitehouse Eq. Practice, p. 1983. Decrees in such cases are frequently made in the alternative—that if the plaintiff shall, on or before a designated date, pay a named sum (redemption); otherwise, bill dismissed, etc.

Plainly, as indicated above, except for the holding of the Supreme Court of Porto Rico that the old Spanish practice is to be

read into the existing Code, an offer to pay would be enough. No prior tender, either in pais or in foro, is, on general equitable principles, necessary.

Assuming, without deciding, that the stricter rule applied by that court in cases of this sort is sound, it is plain that this court would not be warranted in holding that court in error in its conclusion that in this case the purchaser's rights were fully safeguarded when, at the time of trial, the plaintiff had assumed all the rights and obligations of the vendors as to the lease and option of the 100-acre tract. The old Spanish rule is not one that should be extended to cover such a situation as this record discloses.

The judgment of the Supreme Court of Porto Rico is affirmed, with costs to the appellee.