JUDGE SIMPSON
delivered the opinion of the court:
The plaintiffs alleged, in their petition, that their father had a life estate in two slaves, named Henry and Daniel, and that said slaves belonged to them after the death of their father, under a devise in the will of their grandfather. They also alleged that the defendant, Coffey, some years ago, purchased the life estate in said slaves, “ received them into his possession under the sale, and immediately thereafter carried them off to parts unknown and sold them, transferring to the purchaser the absolute title thereof for a large amount, and has held and enjoyed the same ever since.” They also alleged that the life estate had terminated by the death of their father, and prayed for a judgment against the defendant for the value of the slaves, and for hire, &c.
The defendant, in answer to interrogatories put to him by the plaintiffs, (the proceedings being in equity,) admitted that he *104 bad taken the slaves to the city of Louisville, and sold them to persons who, as he believed, were negro-traders; but denied that he sold them to be carried out of the state, or that he knew where they were, or what had become of them. He stated that he purchased the slaves, believing that the father of the plaintiffs had an absolute right and title to them; and, with other matters of defense, he set up and relied upon the statute of limitations in bar of the plaintiffs’ action.
It appeared in evidence that the plaintiffs were entitled to the slaves in remainder, after the death of their father, and that the sale of them by the defendant was made more than five years before the commencement of the action, but that the action was brought within two years after the termination of the life estate.
The circuit court rendered a judgment against the defendant for sixteen hundred dollars, the estimated value of.the slaves at the time the life estate ended, with interest thereon from that .time, and from that judgment the defendant has appealed.
Two questions arise in this case. First, did the pleadings set forth a cause of action against the appellant; and, in the next place, if they did, was the action barred by the statute of limitations ?
First. For the appellant it is contended that, as the owner of the life estate in the slaves, he had a right to sell them, and as nothing passed by the sale but the title which he had purchased, the act was not unlawful, nor injurious to the rights of the appellees. And as there was no admission that the slaves had "been taken out of the state, or were living at the termination of the life estate,.that no cause of action was established against the appellant.
If the appellees could find the slaves, they could undoubtedly sue for and recover them, notwithstanding the sale of them by the appellant. But they have been deprived of them by his act, and although he had a right to sell the life estate in them, he had no right to sell them absolutely. Such a sale was injurious to the interest of the persons entitled in remainder, inasmuch as its tendency was to remove the property out of their reach, by causing the purchaser to suppose that he had a right *105 to do with them as he pleased. The appellant, however, not only sold the absolute right and title to them, but he sold them to negro-traders, persons who follow the business of taking slaves to a southern market, and must therefore be considered as having not only converted the property to his own use, but having converted it in such a manner as to defeat the estate in remainder, by depriving the persons entitled thereto of the benefit of its enjoyment. It is very clear, therefore, that the pleadings contained a good cause of action against the appellant.
Second. The tenant for life of slaves, or any purchaser under him, will be restrained by a court of equity, on the application of the owners of the estate in remainder, from doing any act that will jeopardize their interest, upon the presentation of such a state of case as shows the existence of good grounds to apprehend that the person holding the life estate has the commission of such an act in contemplation. And where, as in this case, the person holding the life estate converts not merely the life estate, but the absolute and entire estate in the property to his own use, and that with the effect of defeating the enjoyment of the estate in remainder, he becomes immediately responsible for the act to the persons entitled in remainder, who have a right to recover against him the full value of their estate. The cause of action accrues so soon as the wrong has been committed. It consists in the injury which has been done to the estate in remainder. It exists independent of the life estate, and is not affected in any manner by its termination. An action for the injury can be maintained during the existence of the life estate, or after it has ended; but as the cause of action accrues at the time of the conversion, the statute of limitations runs from that time, and consequently forms a bar to the present action.
The appellees can maintain an action against any person who has the slaves in possession, or who has had them in possession since the death of the tenant for life, or against any one who did any act injurious to the estate in remainder during the continuance of the life estate, within five years next preceding the commencement of their action. But they cannot main *106 tain the present action, as it is barred by the statute of limitations.
Wherefore, the judgment is reversed, and cause remanded with directions to dismiss the petition.