## ST. ROMES *v.* LEVEE STEAM COTTON PRESS COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 139.　Argued January 20, 1888. — Decided May 14, 1888.

If, after transfer by the plaintiff of the subject of controversy in a litigation in Louisiana, the court, on being informed of the transfer, refuses to permit the suit to be discontinued by the plaintiff, a judgment does not make it *res judicata* as to the assignee.

Dismissal of a suit for want of parties does not make the subject of it *res judicata.*

If a corporation by negligence cancels a person's stock, and issues certificates therefor to a third party, the true owner may proceed against the corporation to obtain the replacement of his stock, or its value, without pursuing the purchaser or those who hold under him.

In a suit in Louisiana against a corporation for damages for refusal to permit a transfer of shares on its books, the prescription of ten years applies: but that prescription is not available in this case.

IN EQUITY.　Decree dismissing the bill.　Complainant appealed.　The case is stated in the opinion.

*Mr. Charles Louque* for appellant.

*Mr. Assistant Attorney General Maury* for appellee.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is a suit in equity instituted in the court below on the 9th of December, 1882, by the appellant, as heir of her mother and brothers, against the appellee, to compel the latter to issue to the appellant a certificate for sixty-six shares of its capital stock, which are charged to have been unlawfully cancelled and transferred to other parties without

authority; and to recover the dividends on said stock since the year 1853. The bill states that in 1845 the complainant's mother, widow de St. Romes, became the owner of said sixty-six shares of stock, and received two certificates therefor, one for 43 shares and the other for 23 shares; but that on the 29th of July, 1853, the defendant, without authority from the widow de St. Romes, by mistake and in fraud of her rights, cancelled said certificates, and has ever since refused to recognize her, her heirs or assigns, as the owners thereof; that in 1861 Madame de St. Romes sued the company for the dividends accruing on said stock, and, by judgment rendered in June, 1868, recovered the dividends for 1848, 1849, 1852, and 1853; that in April, 1876, the present complainant, as owner of said shares, instituted a suit in the Superior District Court of New Orleans against the appellee, which was ended by a nonsuit in 1882. The bill then states the amount of dividends declared by the defendant since 1853, and prays relief as above stated.

The defendant, in its answer, admits that the widow de St. Romes was owner of stock from 1845 to 1853; but that she transferred the same through her agent on the 29th of July, 1853, and has never owned them since; that her agent was Pierre Deverges, who acted as her attorney in fact in the management of her business for many years, being held out by her to the community as such, with power to dispose of her property; that the stock in question was sold by Deverges, as the widow's agent and attorney in fact, to one Cohen on the day mentioned, and transferred to him on the books of the company; and from that time Cohen and those claiming under him have been in possession of said stock, with right to all dividends; that to effect the sale of the stock the widow de St. Romes delivered her certificates of stock to her said agent, and he surrendered them to the defendant, and new certificates were issued to the purchaser. The answer further states that the books and papers of the defendant were destroyed by fire in 1859, and that its secretary, who superintended the transfer of its stock, and Deverges, have both been dead many years, and that the widow never assumed to assert any claim to the

stock, until the suit brought by her in 1861; it states that
Cohen sold the sixty-six shares to Peschier & Forstall, who sold
them to A. & M. Heine, who transferred them to one H. Gally,
the present owner, and that these persons have successively
owned and possessed said stock in good faith, by just title, and
received the dividends thereon to the present time. The answer
sets up the prescription of three years and of ten years. It
further states that in 1871 the widow de St. Romes instituted
suit in the Superior District Court of the parish of New Or-
leans against the defendant and the then owners of the stock,
holding under said sale to Cohen, and claimed said stock and
the dividends which accrued after 1854, which suit was finally
decided by the Supreme Court of Louisiana in March, 1879;
and, although the widow attempted, before the decision was
announced, to withdraw the suit (then on appeal) on the pre-
tence of an assignment of her interest therein to her son
Eugene, in November, 1867, the court, under article 901 of the
Code of Practice, refused to dismiss the case on that account,
and gave judgment against the said widow de St. Romes on
the ground of prescription. The answer sets up this judgment
as *res judicata* in defence to the present suit. The answer fur-
ther states that in April, 1876, the present complainant in-
stituted suit against the defendant in the Superior Court for
the parish of New Orleans, claiming the shares and dividends
now sued for; which suit was finally dismissed for want of
proper parties; the answer claims that this decision also makes
the case *res judicata*, and precludes the complainant from a
recovery in this suit. Some further supplemental pleadings
were filed in the case, but they need not be stated here.

The material questions are, 1st, Whether the matter in con-
troversy is *res judicata;* 2dly, Whether the suit is defective
for want of proper parties; 3dly, Whether the claim is pre-
scribed; and, 4thly, If none of these defences can be main-
tained, whether the stock was transferred by authority of
Madame de St. Romes.

The first question requires us to direct our attention to the
suits that were brought against the defendant in relation to
the stock and its dividends. The first suit was commenced in

January, 1861, and terminated by the judgment of the Supreme Court of Louisiana in January, 1868. It was brought by Madame de St. Romes against the defendant to recover the dividends for the years 1848, 1849, 1852 and 1853, and to be recognized as holder and owner of the stock since 1853 and entitled to all dividends declared thereon since that time, with judgment for the same; or, in default of payment of said dividends, judgment for the value of the shares and interest thereon from 1853. The court gave judgment in the plaintiff's favor for the dividends of 1848, 1849, 1852 and 1853, which accrued before the transfer of the stock, not being satisfied of Deverges' authority to collect them; but as the alleged transferee of the stock was not a party to the suit, it was held that the plaintiff could not be justly recognized as owner of the stock in question; nevertheless her right to claim it in a direct action was reserved.

It is clear that nothing was determined in this action with regard to the validity of the sale and transfer of the stock. Near the close of the proceedings, on the 23d of November, 1867, Madame de St. Romes executed a transfer to her son Eugene de St. Romes of all her interest in the case then pending, and subrogated him to all her rights, claims and demands that might result against said company. On June 9th, 1868, this transfer was filed of record in the cause, and the money recovered in the suit was ordered to be paid to Eugene de St. Romes.

On the 20th of June, 1871, the widow de St. Romes commenced a new action against the defendant, praying that she might be recognized as the owner of the stock; that the cancelling of the certificates might be declared void and the transfer void, and that the defendant, the Levee Cotton Press Company, be ordered to pay her all the dividends which had accrued on the stock since 1853, with legal interest. In pursuance of the decision of the court in the previous case she made the then holders of the stock parties defendant.

During the progress of this suit, in May, 1874, Eugene de St. Romes died intestate, leaving as his sole heirs his mother, his brother Victor, and the present plaintiff, Ermance de St.

Romes. In August, 1874, Victor also died, intestate, leaving as his sole heirs his mother and his sister, Ermance. On the 21st of October, 1874, the widow de St. Romes, the mother, renounced the succession of her sons in favor of her daughter Ermance.

The suit still went on in the name of the widow, and in November, 1874, the Superior District Court dismissed the plaintiff's demand, on the ground that it was prescribed. The widow appealed, and the Supreme Court affirmed the judgment. Quoting the civil code, the court said: "Shares or interests in banks and other companies of commerce or industry are considered as movables (C. C. 466). Three years in good faith, except where the thing was let or stolen, gives a prescriptive title to movables (C. C. 3472). Ten years without title or good faith (C. C. 3475). The defendants possessed under a title and personally in good faith for eighteen years before this suit was brought."

Before this judgment was rendered, the plaintiff wished to dismiss the bill, by reason of having parted with her interest to her son Eugene; but, under article 901 of the Code of Practice, the court refused to dismiss it. Still, as she had actually parted with her interest, the decision is not binding on her transferee or his heirs. So that this judgment also fails to make the present case *res judicata*. The decision of the court, however, is instructive in relation to the law of Louisiana, and may assist us in the further consideration of the case.

Whilst this suit was in progress, on the 1st of April, 1876, the present complainant, Ermance de St. Romes, commenced a suit against the defendant in the Superior District Court to recover the dividends on the sixty-six shares of stock which accrued after the year 1853 down to the commencement of the suit. She based her claim on the allegation that she was the owner of the said shares of stock by inheritance from her brother Eugene, who was transferee of her mother, etc. The Supreme Court, on appeal, dismissed the action for want of proper parties, holding that the persons having possession and claiming to be the owners of the stock should be made parties, because their adverse right could not be disposed of in a suit

in which they were not parties; that the groundwork of the plaintiff's action was the ownership of the stock; that if she was not owner of the stock she could not claim the dividends; that the examination of the ownership in the absence of those to whom the stock had been transferred, and who were in possession of it, and had regularly received the dividends, would be barren of any practical result. This judgment was rendered in 1882. But a dismissal of a suit for want of parties does not render the subject of controversy *res judicata.* It leaves the merits unconsidered and undisposed of. We are of opinion that the defence of *res judicata* cannot be sustained.

In the same year (1882) in which the last judgment was rendered by the Supreme Court of Louisiana, the complainant filed her bill in the present suit, again without making the owners of the stock parties. She founds her claim, as in the former suit, upon her ownership of the stock, alleging that neither her mother nor her brothers ever authorized the transfer of it, and that the cancellation of the certificates was done by mistake, and was a fraud against the widow de St. Romes.

If the Supreme Court of Louisiana was right in dismissing the suit for want of proper parties, the present suit is obnoxious to the same objection. True, it has been developed in the pleadings, that the stock had been so often transferred and had become so blended with other stock, that it could not now be identified, and the present owners could not be ascertained. But is not that a result of the long delay of the complainant and those from whom she derived her interest? The present suit was not commenced until nearly thirty years after the transfer of the stock by Deverges as attorney in fact of Madame de St. Romes. Even if prescription has been sufficiently interrupted to give the complainant a *locus standi* in court, notwithstanding the lapse of time, she may nevertheless be subject to other disadvantages resulting therefrom which cannot be cured.

But was the Louisiana court right in its conclusion as to necessary parties? If a corporation has by negligence cancelled a person's stock, and issued certificates therefor to a

third party who has purchased it from one not authorized to sell it, is the true owner bound to pursue such purchaser, or may he directly call upon the corporation to do him right and justice by replacing his stock, or paying him for its value? The weight of authority would seem to be in favor of the latter alternative. See *Telegraph Co.* v. *Davenport*, 97 U. S. 369; *Loring* v. *Salisbury Mills*, 125 Mass. 138; *Pratt* v. *Taunton Copper Co.*, 123 Mass. 110; *Pennsylvania Railroad Co.'s Appeal*, 86 Penn. St. 80; *Loring* v. *Frue*, 104 U. S. 223; *Salisbury Mills* v. *Townsend*, 109 Mass. 115.

Then will the plea of prescription avail the defendant? The Supreme Court of Louisiana decided in the second suit brought by the widow, 31 La. Ann. 224, 229, that three years' possession in good faith of a movable (which corporate stock is declared to be, Civil Code, 474 (466),) is sufficient to give good title. C. C. 3503 (3472). But that decision was based on the theory that the owner was bound to pursue her stock against those who had obtained possession of it, and in obedience to that view she had made them parties; and it was in reference to such persons that the prescription of three years was allowed. It could not apply to the defendant, because the defendant never had possession of the stock. It was answerable for carelessly and negligently allowing the transferees to obtain possession of it. It follows that the corporation cannot rely on the prescription of three years; but only on the prescription of one year, which is applicable to the commission of offences and *quasi* offences (and which was not pleaded); or on that of ten years, which is applicable to personal actions generally. Civ. Code, 3536 (3501), 3544 (3508). In *Case* v. *Citizens' Bank*, 100 U. S. 446, which was a suit to recover damages for refusal on the part of the Crescent City Bank to permit a transfer of shares on its books, Mr. Justice Clifford, delivering the opinion of the court, cited a number of Louisiana authorities, to show that in such a case as that the prescription of one year did not apply, but that the prescription of ten years did. The present case seems to belong to the same category. One of the cases referred to by Justice Clifford was that of *Percy* v. *White*, 7 Rob. 513, which was

a suit of stockholders against the directors of a bank for damages and losses sustained through their negligence, fraud and mismanagement of the affairs of the bank. The Supreme Court of Louisiana held this to be an action for damages *ex contractu* against mandataries, or agents. We have looked into the Louisiana reports to some extent and have not been able to find any decisions contrary to the general tenor of those on which this court relied in *Case* v. *The Citizens' Bank.*

If, therefore, the defendant can only plead prescription of ten years, the question remains, whether it is available in this case; and it would seem to be clear that it is not. For though the transfer complained of took place in 1853, the widow de St. Romes brought her action in 1861, after the lapse of only eight years; and it was not terminated until 1868. The complainant commenced her action in the state court in 1876, after an interval of only eight years, and this action was not terminated until 1882. The present action was commenced in the same year. So that there has never been an uninterrupted period of ten years in which prescription could run. It follows that the defence of prescription fails. Civil Code, art. 3518 (3484); *Riviere* v. *Spencer,* 2 Martin, 79, 83; *Badon* v. *Bahan,* 4 La. Ann. 467, 470; *Turner* v. *McMain,* 29 La. Ann. 298, 300.

The defendant's counsel feeling, no doubt, the uncertainty of the defences referred to, dwelt with much emphasis and ingenuity upon the presumptive proofs of the transfer of the stock being made by Deverges with the knowledge and authority of Madame de St. Romes. It is unnecessary to say more on this subject than that the proofs referred to fail to satisfy us that any authority was given, or that the transfer was acquiesced in. The Supreme Court of Louisiana entertained the same opinion in the case brought in 1861, and very clearly expressed it, although they made no decision on the subject in consequence of what they considered a want of proper parties.

*The decree of the Circuit Court is reversed and the cause remanded with instructions to take further proceedings in conformity with this opinion.*