## MARTIN F. FALK v. THE DIRIGOLD CORPORATION.[1]

April 5, 1928.

No. 26,546.

**Defendant not entitled to jury trial in action in equity to compel issue of stock.**

1. The complaint sets forth an action in equity to compel the issuance to plaintiff of certificates for capital stock, and defendant was not entitled to a jury trial.

**Such action may be maintained when actual value of stock is conjectural.**

2. Such an action may be maintained where the remedy in damages is uncertain or inadequate. That remedy is uncertain where the stock has no market value and its actual value is conjectural only.

**Plaintiff entitled to same proportionate part of present common stock as of the original.**

3. Defendant's common stock consisted of 1,000 shares without par value. For a valid consideration defendant issued a certificate for 100 shares which was transferred to plaintiff who surrendered it receiving therefor one issued in his own name. Thereafter, without any change in the actual capital, defendant changed the number of shares into which the common stock was divided from 1,000 to 35,000. *Held* that plaintiff is entitled to the same proportionate part of the present common stock that he held of the original stock and may maintain this action to enforce his right thereto. *Held* further that defendant, having received a valid consideration for the original stock, cannot question the consideration for the transfer to plaintiff from the original purchaser. *Held* further that plaintiff had made no agreement to surrender his stock for cancelation.

Corporations, 14 C. J. p. 486 n. 63.
Juries, 35 C. J. p. 159 n. 33.

See note in 31 L.R.A.(N.S.) 491; 22 A. L. R. 1032; 7 R. C. L. 278; 25 R. C. L. 298; 4 R. C. L. Supp. 1580; 5 R. C. L. Supp. 1318.

Plaintiff, a stockholder in the defendant corporation to the extent of 100 shares of its nonpar capital stock, brought an action in equity

[1] Reported in 219 N. W. 82.

in the district court for St. Louis county to compel the issue to him of his proportionate share of an increase in the corporation's stock of the same kind effected by an amendment of its certificate of incorporation. From a judgment in favor of plaintiff, Magney, J. defendant appealed. Affirmed.

*Sanborn, Graves & Andre* and *Washburn, Bailey & Mitchell*, for appellant.

*Jenswold, Jenswold & Dahle*, for respondent.

TAYLOR, C.

Carl A. von Malmborg was one of the officers and principal stockholders of a corporation in Sweden engaged in manufacturing tableware and other articles from metals known as "dirigold" and "alcobronze," formed by combining various metals according to secret formulas and processes. In the latter part of 1923 he came to the United States for the purpose of forming a corporation in this country to manufacture such products and was empowered to contract on behalf of the Swedish company for the use of its formulas, processes and specially designed machinery and appliances. In January, 1924, he entered into a contract with plaintiff and Victor J. Wallin of the city of Minneapolis to organize a corporation under the laws of the state of Delaware to manufacture "dirigold" and "alcobronze" products. This promotion agreement provided that the capital stock of the corporation should consist of 1,000 shares of common stock of no par value and 100,000 shares of preferred stock of the par value of $10 each. It further provided that the entire 1,000 shares of common stock should be issued to von Malmborg in payment for his services and for the rights, privileges and property which he agreed to obtain for the corporation from the Swedish company. It further provided that upon receiving this stock von Malmborg should donate 299 shares thereof to the treasury of the corporation and should assign 100 shares each to plaintiff and Wallin in payment for services to be rendered by them in promoting the corporation, their shares to be delivered when the corporation began business. He was to hold the remaining 501 shares as his own property. Although not so stated in this con-

tract, it appears that he was to hold them for the benefit of himself and his Swedish associates.

Pursuant to the above contract, a corporation was created on January 22, 1924, under the name "The Dirigold Corporation," and was authorized to issue common and preferred stock in the amounts and of the character specified in the contract. The corporation so organized is the defendant in this action.

On February 1, 1924, defendant entered into a contract with the Swedish company whereby the Swedish company granted defendant the right to use its formulas and processes for manufacturing "dirigold" and "alcobronze" and the exclusive right to manufacture "dirigold" and "alcobronze" products in the United States and Canada, and agreed to furnish designs and patterns for the necessary machinery, furnaces and appliances, and whereby defendant, in payment therefor, agreed to issue to von Malmborg the entire 1,000 shares of common stock as fully paid. The contract further provided that von Malmborg should reassign 298 shares of this stock to defendant to be held and used as treasury stock, should hold 200 shares in trust for the Swedish company, and should hold the remaining 502 as his own property to be disposed of as he saw fit.

The promoters knew that the corporation would require at least $200,000 in money to establish and carry on the business, and the project involved raising that sum by the sale of preferred stock. Plaintiff and Wallin undertook to sell this stock but were unsuccessful; and in March, 1924, they conceived the plan of making the preferred stock more attractive by giving with it common stock as a bonus. To provide a sufficient quantity of common stock for that purpose it was necessary to amend the articles of incorporation. No stock had yet been issued, and there were no stockholders to hold a stockholders' meeting and make the amendment. The contract with the Swedish company provided that one-third of the common stock should be issued to von Malmborg forthwith. At a meeting of the board of directors held March 28, 1924, three certificates were issued to von Malmborg, two for 100 shares each and the other for 133 shares. He assigned one of the certificates for 100 shares to plaintiff and the other to Wallin. Plaintiff surren-

dered his certificate and received therefor a new certificate issued directly to himself. Wallin also surrendered his certificate and received therefor two new certificates, one issued to himself, the other to his wife. After these transfers the stockholders unanimously adopted an amendment to the articles of incorporation increasing the number of shares of common stock of no par value from 1,000 to 35,000, and changing the preferred stock from 100,000 shares of the par value of $10 to 10,000 shares of the par value of $100. On the same date the board of directors authorized the giving of one share of common stock as a bonus with each share of preferred stock sold, and authorized Wallin as vice-president and plaintiff as treasurer to execute an amendatory or supplemental contract with the Swedish company made necessary by these changes. This supplemental contract was executed a few days later, and provided that as payment for the property and the rights and privileges granted by the Swedish company the defendant should issue the entire 35,000 shares of common stock to von Malmborg; that he should reassign 10,430 shares to defendant to be disposed of as the board of directors should determine; that he should hold 7,000 shares in trust for the Swedish company; and that he should hold the remaining 17,570 shares as his own property to be disposed of as he saw fit. It will be seen that these several amounts are 35 times the corresponding amounts specified in the original contract. Except as so changed, the original contract was continued in force. Thereafter von Malmborg and Wallin surrendered and canceled the certificates issued March 28 which were held by them, but plaintiff refused to surrender or cancel the certificate held by him. Subsequently defendant issued 24,570 shares to von Malmborg, retaining the 10,430 shares which the contract required von Malmborg to reassign to it as treasury stock. None of the common stock has been sold or offered for sale, but a portion of it has been issued as bonus stock to purchasers of preferred stock.

Plaintiff and Wallin made an effort to sell preferred stock on the new plan but were unable to dispose of any substantial amount. Thereafter von Malmborg himself succeeded in raising the necessary

funds by the sale of such stock, and the corporation is now carrying on the business for which it was organized.

Plaintiff brought this action claiming that he was the owner of 100 shares of the original common stock; that the sole purpose of the amendment was to divide the common stock into a sufficient number of shares so that a portion of it could be given as a bonus to purchasers of preferred stock; that this was accomplished by dividing such stock into 35 times as many shares as were originally specified thereby decreasing the value of each share to 1/35 of its former value; that having been the owner of 100 shares or 1/10 of the original stock he is entitled to 3,500 shares or 1/10 of the present stock, and asks that he be adjudged to be the owner of that number of shares and that defendant be required to issue to him the additional 3,400 shares.

The court found the facts as claimed by plaintiff, and rendered judgment to the effect that he is the owner of 3,500 shares of the present common stock, and directed that defendant either issue to him a certificate for 3,500 shares upon the surrender and cancelation of the certificate for 100 shares now held by him, or permit him to retain that certificate and issue to him a certificate for 3,400 additional shares. Defendant appealed.

Defendant demanded a jury trial and urges the refusal to grant it as error. The ruling was correct. The complaint does not state facts sufficient to constitute a cause of action for damages, nor a cause of action in replevin to obtain possession of existing certificates of stock. It asserts only an equitable right and asks only for equitable relief.

Defendant contends that plaintiff must seek his remedy in an action for damages, and that an action in equity to compel the issuance of the stock, in substance an action for specific performance, will not lie. This is the rule where the value of the stock can be readily ascertained with reasonable certainty and damages will afford adequate relief. Northern Trust Co. v. Markell, 61 Minn. 271, 63 N. W. 735; Moulton v. Warren Mfg. Co. 81 Minn. 259, 83 N. W. 1082. But where the stock is not sold on the market and

has no established market value, and its actual value is conjectural or problematical depending upon the outcome of the enterprise, specific performance may be enforced, as there is no definite basis for assessing damages. Unless the remedy in damages is both adequate and certain, a party entitled to receive shares of capital stock has the right to require that they be issued to him. First Nat. Bank v. Corporation Sec. Co. 128 Minn. 341, 150 N. W. 1084; Nason v. Barrett, 140 Minn. 366, 168 N. W. 581; also numerous cases collected in an annotation upon this question in 22 A. L. R. 1038. Plaintiff invoked the proper remedy.

Defendant further contends, in effect, that plaintiff is not entitled to the stock represented by his certificate. In support of this contention defendant claims that there was no consideration for the issuance of this stock. The contract with the Swedish company provided that all the common stock should be issued to von Malmborg in payment for the property and property rights granted by the Swedish company. Pursuant thereto this and other stock was issued to von Malmborg and defendant has received the stipulated consideration for it. Von Malmborg had agreed to assign 100 shares of his stock to plaintiff for services to be rendered by plaintiff and assigned to him the 100 shares in question. The real ground upon which defendant bases its contention of no consideration is the claim that plaintiff failed to render the promised services. It may be that the consideration for the transfer from von Malmborg to plaintiff has failed and that plaintiff may not be entitled to the shares as against von Malmborg, but that is a matter between them which cannot be litigated in this action to which von Malmborg is not a party. The court found that this stock had been duly transferred to plaintiff by von Malmborg, and the evidence sustains that finding.

In further support of the contention that plaintiff is not entitled to this stock, defendant claims that the 333 shares of which plaintiff's were a part "were issued solely for the purpose of enabling the promoters to hold a valid stockholders' meeting and amend the Certificate of Incorporation." Defendant does not make its position clear. It does not claim that the proceedings of March

28 were illegal. On the contrary it expressly admits that they resulted in a legal amendment of the articles of incorporation, which necessarily implies that the stock was lawfully issued and the meeting lawfully held. The court found that the issuance of the 333 shares was duly authorized; that they were duly issued for a sufficient consideration; that 100 shares thereof were duly transferred to plaintiff; that he surrendered the certificate therefor to defendant and defendant duly issued to him a new certificate for the shares so transferred; and that he is still the owner of the stock represented by such certificate. These findings are sustained by the evidence.

Defendant's argument seems to be, not that the stock was invalid when issued, but that, although properly issued, it should have been surrendered after the holders had accomplished their purpose of amending the articles of incorporation. No agreement or understanding to that effect was proved, and the findings impliedly negative any such intention. Defendant points to the fact that von Malmborg and Wallin surrendered their stock and that the supplemental contract purports to dispose of all the common stock as justifying an inference that all stock issued prior to the amendment was to be surrendered. The supplemental contract recognized that stock previously issued was then outstanding and made no provision for having such stock surrendered. It made the same proportionate disposition of the common stock made by the prior contract and to the same parties. The relative rights of the several parties were not affected by the changes made. All the common stock except the 10,430 shares of so-called treasury stock has been issued to von Malmborg. Whether Wallin received any of it does not appear. No facts are shown which furnish any valid reason for saying that plaintiff is not entitled to his proportionate share.

The amendment did not increase the capital of the corporation. This is conceded by both parties. It merely made a change in the number and size of the aliquot parts into which the capital was divided. Therefore the rules governing the disposal of increases of stock which represent increases of capital are not applicable,

and the authorities establishing those rules, several of which are cited, are not in point.

It was urged at the argument that, as all the common stock except the so-called treasury stock had been issued to von Malmborg, plaintiff's cause of action was against him and not against defendant. The common stock of no par value merely represents the proportionate interest of the several holders thereof in the corporation and was originally divided into 1,000 shares or aliquot parts. By issuing its certificate to plaintiff for 100 of these shares or 1/10 of these aliquot parts, defendant created a contract between them under which plaintiff became the owner of 1/10 of the interest in the corporation represented by the entire common stock. Subsequently, without increasing or in any way changing the amount of the actual capital, this stock was divided into 35,000 shares or aliquot parts, thereby decreasing the fractional interest represented by each share to 1/35 of the interest represented by it at the time plaintiff acquired his stock. Plaintiff's interest in the corporation could not be affected by such a change. He still remains the owner of and entitled to certificates representing 1/10 of the common stock. His ownership thereof rests upon his contract with defendant, and he has the right to require defendant to issue to him the certificates necessary to evidence such ownership. St. Romes v. Levee Steam Cotton Press Co. 127 U. S. 614, 8 S. Ct. 1335, 32 L. ed. 289.

Defendant also urges that plaintiff should be estopped from asserting his present claim for the reason that the second contract with the Swedish company was signed by him as one of the officers of defendant. An examination of the record discloses nothing upon which to base an estoppel.

We concur in the conclusions reached by the learned trial court, and its judgment is affirmed.